1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 EASTERN DISTRICT OF CALIFORNIA

10 MARSIAL LOPEZ, et al.,                )   1:07cv474 DLB
                                         )
11                                       )   ORDER GRANTING PLAINTIFFS'
                                         )   MOTION FOR CLASS CERTIFICATION
12               Plaintiffs,             )   (Document 33)
                                         )
13       v.                              )   ORDER DENYING AS MOOT PLAINTIFFS'
                                         )   MOTION TO STRIKE
14 DONNY YOUNGBLOOD, et al.,             )   (Document 47)
                                         )
15                                       )   ORDER SETTING STATUS CONFERENCE
                                         )       May 4, 2009
16               Defendants.             )       9:00 a.m.
   _____ )       Courtroom 9

17

18       On June 17, 2008, Plaintiffs Marsial Lopez, Sandra Chavez and Theodore Medina

19 ("Plaintiffs") filed the present motion for class certification.  Plaintiffs also filed a motion to

20 strike on July 28, 2008.  Both motions were heard on December 19, 2008, before the Honorable

21 Dennis L. Beck, United States Magistrate Judge.  Barrett Litt and Donald Cook appeared on

22 behalf of Plaintiffs.  Jennifer Thurston and Terence Cassidy appeared on behalf of Defendants

23 Kern County, the Kern County Sheriff's Office, Sheriff Donny Youngblood (individually and in

24 his official capacity) and Former Sheriff Mack Wimbish (individually) ("Defendants").

25                                    **BACKGROUND**

26       Plaintiff Marsial Lopez, individually and as class representative, filed the instant civil

27 rights action on March 27, 2007.  On June 21, 2007, Plaintiffs Marsial Lopez, Sandra Chavez

28 and Theodore Medina, individually and as class representatives, filed a First Amended

1

Complaint ("FAC") against Kern County, the Kern County Sheriff's Office, Sheriff Donny

Youngblood (individually and in his official capacity) and Former Sheriff Mack Wimbish

(individually).  The action concerns the manner in which prisoners are searched in Kern County's

jails and alleges violations of the Fourth, Eighth and Fourteenth Amendments, as well as

violations of the California Constitution.

On June 17, 2008, Plaintiffs filed a motion for class certification, seeking certification of

two classes- the Post-Release Class and the Group Strip Search Class.  Defendants opposed the

motion on July 17, 2008.  Plaintiffs filed their reply on July 28, 2008, along with a motion to

strike the declaration of Ian Silva in support of Defendants' opposition.  Defendants' opposed the

motion to strike on October 3, 2008.

## FACTUAL BACKGROUND

The FAC sets forth the claims of the class representatives as follows:

1.  Plaintiff Marsial Lopez: After surrendering himself to out-of-state officers, Lopez
    was incarcerated in Kern County Jails from June 2005 through November 2006.
    When he was transferred between jail facilities and when he was returned to jail
    from court, he was subjected to intrusive strip/visual body cavity ("vbc") searches,
    in the presence of others not necessary for the searches, without privacy and in
    unsanitary conditions.  On November 6, 2006, he was taken to court and all
    charges against him were dismissed based on DNA evidence.  He was ordered
    released, though when he returned to jail for the sole purpose of processing his
    release, he was subject to an illegal an intrusive strip/vbc search, in unsanitary
    conditions, without privacy and without reasonable suspicion that he possessed
    contraband or weapons.

2.  Plaintiff Sandra Chavez: On February 17, 2007, Chavez was arrested and upon
    her arrival at the jail, Kern County Sheriff's Department ("KCSD") personnel
    subjected her to an intrusive strip/vbc search.  She was searched in a room with
    four or five other women and male officer within view.  At the time of the search,
    KCSD had no probable cause or reasonable suspicion that Chavez or the other
    prisoners were in possession of contraband.  She was eventually released from
    custody and given a fine and probation.

3.  Plaintiff Theodore Medina: On June 7, 2006, Medina was arrested by KCSD
    personnel and transported to jail.  Upon arrival, he was subjected to an intrusive
    strip and vbc search in a room with four or five other arrestees.  At the time of the
    search, KCSD had no probable cause or reasonable suspicion that Medina or the
    other arrestees were in possession of contraband.

    Within two years from the filing of the FAC, Medina was also arrested on
    a charge of spousal abuse.  While being booked, KCSD personnel subjected him
    to an intrusive strip and visual body cavity search ("vbc"), in the presence of
    others not involved in the search and in unsanitary conditions.  He was eventually
    ordered released, and as a routine part of out-processing, he was subjected to an

intrusive strip search, in the presence of others not involved and in unsanitary conditions, in the absence of probable cause.

Plaintiffs allege that the searches were conducted pursuant to Defendants' policy and practice to indiscriminately search all, or a large number of, persons being processed into jail without regard to the nature of their offense, whether they are under an order of release, whether there was probable cause, etc. They further allege that Defendants have a policy of not limiting the persons who can see, hear or observe the searches, meaning that other inmates, members of the opposite sex, disposable jail personnel and others are able to see the searches and the class members' naked bodies.

Based on these allegations, Plaintiffs allege (1) violation of 42 U.S.C. § 1983 (Fourth Amendment protection against unreasonable search and seizures); (2) violation of Equal Protection; (3) violation of California Constitution, Article I, sections 7 and 13; (4) violation of California Civil Code section 52.1(b) (civil action for protection of rights); (5) violation of statutory duties, Penal Code section 4030 (policies and practices for strip and body cavity searches)[1]; and (6) violation of mandatory duties to protect against specific injuries under California Government Code section 815.6.

Plaintiffs seek injunctive relief, as well as general, special, statutory and punitive damages.

**DISCUSSION**

I.      **MOTION FOR CLASS CERTIFICATION**

Plaintiffs seek to certify the following classes:

Post-Release Class (Medina and Lopez): persons who, from March 27, 2005, up to October 1, 2007,[2] or the time of judgment or settlement of the case: (a) were in KCSD custody; (b) were taken from jail to court; (c) became entitled to release after going to court; and (d) were strip and/or vbc searched before release pursuant to KCSD's blanket policy, practice and/or custom to strip/vbc search all court returns, including those entitled to release.

---

[1] Although section 4030 specifically states that it is applicable only to "prearraignment detainees arrested for infraction or misdemeanor offenses," Plaintiffs believe that the section applies to felony arrestees, as well. Defendants dispute this point.

[2] Plaintiffs contend that the policies at issue were in effect until October 2007.

3

Group Strip Search Class (Lopez, Chavez and Sanchez):  persons who, from March 27, 2005, up to October 1, 2007, or the time of judgment or settlement of the case: (a) were in KCSD custody; (b) were subjected to a strip and/or vbc search in a group with other inmates also being strip/vbc searched, which search did not afford privacy from others; and (c) whose strip searches were conducted pursuant to KCSD's blanket policy, practice and/or custom to regularly conduct strip/vbc searches in a group setting.

To qualify for class certification, Plaintiffs must satisfy all of the requirements of Rule 23(a) of the Rules of Civil Procedure and any one of the requirements of Rule 23(b).  Rule 23(a) requires (1) impracticability of joinder due to numerosity; (2) commonality of questions of law or fact; (3) typicality of claims; and (4) adequacy of representation.

The burden is on the party seeking to maintain the class action.  In this case, Plaintiff must establish a prima facie showing of each of the elements of Rule 23(a) prerequisites and the appropriate 23(b) ground for a class action.  Taylor v. Safeway Stores, Inc., 524 F.2d 263, 270 (10th Cir. 1975), *overruled on other grounds* by Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983).  The burden, however, is slight.  Plaintiff need only present sufficient proof to allow the court to come to a "reasonable judgment" on each requirement.  Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

A.    23(a) Requirements

1.    *Numerosity*

The class must be so numerous that joinder of all members individually is "impracticable."  Fed.R.Civ.P. 23(a)(1).  No specific numerical threshold is required; each case must be examined.  General Tel.C. v. E.E.O.C., 446 U.S. 318, 330, 100 S.Ct. 1698 (1980).  Generally, 40 or more members will satisfy the numerosity requirement.  Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2nd Cir. 1995).

To establish numerosity, Plaintiffs point to the sheer number of individuals who are processed, transported and returned under the authority of the KCSD.  For example, there is an average daily population of 2,500 inmates, and 40,000 new arrests are received a year.  Assuming that the practice ceased as of October 2007, and given the class period of 30 months, Plaintiffs calculate that approximately 100,000 individuals were processed.  Sgt. Gonzales, the classification supervisor, calculated that in 2006 alone, 51,882 inmates were transported to and

1  from court and 44,797 inmates were released by the jails.  Declaration of Barrett S. Litt ("Litt

2  Dec."), Ex. 9.  Plaintiffs have not yet identified a precise number because they have not received

3  Sgt. Gonzales' computer database.

4       Defendants do not dispute numerosity.  In any event, the numbers provided by Plaintiffs

5  satisfy the numerosity requirement.

6            2.    *Commonality*

7       There must be questions of law or fact common to the class.  Fed.R.Civ.P. 23(a)(2).  A

8  "common nucleus of operative facts" is usually enough to satisfy the commonality requirement.

9  Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992).

10      Plaintiffs contend, and the Court agrees, that class certification in this action would not

11 turn on the individual circumstances of each search.  Rather, common issues exist where there is

12 a blanket policy of (1) conducting strip/vbc searches of those returning from court and entitled to

13 release; and (2) conducting strip/vbc searches in groups where inmates could view each other.

14 These blanket policies obviate the need to conduct individualized liability determinations.

15      Defendants take issue with the class definitions, arguing that individuals who were not

16 searched would be allowed into the class.  However, each definition clearly states that the class

17 includes, among other things, individuals who "**were strip and/or vbc searched** before release"

18 and those who "**were subjected to a strip and/or vbc search** in a group with other inmates also

19 being strip/vbc searched, which search did not afford privacy from others."  A basic requirement

20 of each class is the necessity of the individual to have been *actually* searched.  The Court

21 therefore finds no problem with the definitions.

22            3.    *Typicality*

23      Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be]

24  typical of the claims or defenses of the class."  In General Tele. Co. of the Southwest v. Falcon,

25 457 U.S. 147, 102 S.Ct. 2364 (1982), the Court noted "[t]he commonality  and typicality

26 requirements of Rule 23(a) tend to merge."  457 U.S. at 157 n. 13, 102 S.Ct. 2364.  A named

27 plaintiffs' claim is "typical" under Rule 23 if it arises "from the same event or practice or course

28 of conduct that gives rise to the claims of the other class members and his or her claims are based

1  on the same legal theory." Ballard v. Equifax Check Services, 186 F.R.D. 589, 595 (E.D.Cal.

2  1999).

3      The typicality requirement is satisfied for the same reasons Plaintiffs have demonstrated

4  commonality. The Plaintiffs' allegations arise from the same practice or course of conduct of

5  Defendants, and certainly, their claims are based on the same legal theory.

6              4.    *Adequacy of Representation*

7      The person representing the class must be able "fairly and adequately to protect the

8  interests" of all members in the class. Fed.R.Civ.P. 23(a)(4). The representation is "adequate" if

9  the attorney representing the class is qualified and competent and the class representatives are not

10 disqualified by interests antagonistic to the remainder of the class. Lerwill v. Inflight Motion

11 Pictures, Inc., 582 F.2d 597, 512 (9th Cir. 1978).

12     Although Defendants suggest that Plaintiffs do not fall into the categories they propose to

13 represent, the interests of the class members are aligned because they were all subject to the same

14 blanket policy.

15     As to Class Counsel, there does not appear to be any dispute as to the qualifications of

16 either Mr. Litt or Mr. Ester.

17     B.    23(b) Requirements

18     Although Plaintiffs seek certification under all three sections of Rule 23(b), they do not

19 address 23(b)(2). As discussed below, the Court finds the class suitable for certification under

20 23(b)(3) and will therefore not analyze 23(b)(1).

21     Rule 23(b)(3) provides for certification when:

22     (3) the court finds that the questions of law or fact common to the members of the class
       predominate over any questions affecting only individual members, and that a class action
23     is superior to other available methods for the fair and efficient adjudication of the
       controversy. The matters pertinent to the findings include: (A) the interest of members of
24     the class in individually controlling the prosecution or defense of separate actions; (B) the
       extent and nature of any litigation concerning the controversy already commenced by or
25     against members of the class; (C) the desirability or undesirability of concentrating the
       litigation of the claims in the particular forum; (D) the difficulties likely to be
26     encountered in the management of a class action.

27     The satisfaction of the typicality requirement of Rule 23(a) goes a long way towards

28

1  satisfying the Rule 23(b)(3) requirement of commonality. Gen. Tel. Co. of the Southwest v.

2  Falcon, 457 U.S. 147, 157 n. 13 (1982).

3        It appears that only commonality/predominance and management are at issue. As to

4  commonality, the Court again finds because this action involves a challenge to Defendants'

5  blanket strip/vbc search policy, the question of law and fact common to the class members

6  predominate over any questions affecting only individual members. Plaintiffs identify two key

7  questions common to all members: (1) whether the County has a particular strip search policy;

8  and (2) whether the policy violates the constitution. In other words, proof of liability will not

9  vary among members of the class.

10        Insofar as Defendants rely on the "vastly different" experience of each Plaintiff to defeat

11  predominance, they unpersuasively attempt to turn the Court's attention away from the actual

12  issue- the constitutionality of the blanket strip/vbc search policy. In fact, a majority of

13  Defendants' opposition and supporting declarations focus mainly on factual issues in an attempt

14  to justify their policy. Such inquiries are not relevant at the class certification stage. In any

15  event, the individualized experiences Defendants point to, such as whether Plaintiffs were

16  consistently subject to searches and the circumstances under which each Plaintiff was transported

17  to and from court, have little relevance to the constitutionality of the blanket policy.

18        Defendants' reliance on Klein v. DuPage County, 119 F.R.D. 29, 31 (N.D.Ill. 1988), is

19  also misplaced. Klein involved a group of inmates who alleged that routine strip and cavity

20  searches before and after court appearances and visitation violated the Fourth Amendment.

21  There, the court denied class certification, explaining:

22      Here, where there are special institutional security concerns and where each plaintiff may
    have been arrested for different reasons, may have had full or no contact with those
23      outside the prison, may pose little or great threats to prison safety, and may have been
    searched in a variety of ways at numerous different times, it is questionable that there is a
24      narrow issue suitable for one constitutional determination in the context of a class action.

25        The court also explained that whether the searches were reasonable or unconstitutional "is

26  a fact-specific inquiry that depends upon the way each plaintiff was searched and the security

27  risks presented by each plaintiff." Klein, 119 F.R.D at 30. Here, however, such issues are not

28  relevant. There is no dispute that the Kern County Jail has "special institutional security

7

concerns," nor is there any issue as to why each Plaintiff was arrested. Moreover, while the prisoners in <u>Klein</u> may have been searched "in a variety of ways at numerous different times," the variability of Plaintiffs' searches is not relevant to the central issue- whether the blanket policy, to which all Plaintiffs were subject, was constitutional. In fact, <u>Klein</u> noted that certification may be proper in cases involving the "narrow question" of whether a "blanket policy" was constitutional. <u>Klein</u>, 119 F.RD. at 30. Put simply, <u>Klein</u> denied class certification for reasons that are either not disputed here, or are not relevant to the ultimate issue.[3] <u>See also</u> <u>Blihovde v. St. Croix County</u>, 219 F.R.D 607, 621 (W.D. Wis. 2003) (distinguishing <u>Klein</u> because plaintiffs did not allege that they were searched in accordance with a uniform policy).

While the Court finds that commonality exists, it recognizes Defendants' concern over individualized damages. Individual damage issues do not defeat a finding that common questions of law or fact predominate, though it may warrant a method for handling damages. Based on Plaintiffs' representations in their briefing and discussions at oral argument, the Court is satisfied that any individualized damage issues can be properly managed. The Court can re-visit this issue if and when it becomes necessary.

Accordingly, based on the above analysis, the Court GRANTS Plaintiffs' motion for class certification and CERTIFIES the following classes under Rule 23(b)(3):

> <u>Post-Release Class</u>: Persons who, from March 27, 2005, up to October 1, 2007,[4] or the time of judgment or settlement of the case: (a) were in KCSD custody; (b) were taken from jail to court; (c) became entitled to release after going to court; and (d) were strip and/or vbc searched before release pursuant to KCSD's blanket policy, practice and/or custom to strip/vbc search all court returns, including those entitled to release.

> <u>Group Strip Search Class</u>: Persons who, from March 27, 2005, up to October 1, 2007, or the time of judgment or settlement of the case: (a) were in KCSD custody; (b) were subjected to a strip and/or vbc search in a group with other inmates also being strip/vbc searched, which search did not afford privacy from others; and (c) whose strip searches were conducted pursuant to KCSD's blanket policy, practice and/or custom to regularly conduct strip/vbc searches in a group setting.

---

[3] The Court also notes that later courts refused to follow the reasoning of <u>Klein</u>. <u>See eg.</u> <u>Gary v. Sheahan</u>, 1999 WL 281347, *3 (N.D. Ill. 1999).

[4] Plaintiffs contend that the policies at issue were in effect until October 2007.

## II. MOTION TO STRIKE

In conjunction with their reply, Plaintiffs moved to strike all but four paragraphs of Ian Silva's Declaration, filed in support of Defendants' opposition. As Mr. Silva's Declaration did not factor into this Court's analysis, Plaintiff's motion is DENIED AS MOOT.

## III. STATUS CONFERENCE

The parties SHALL appear at a status conference on May 4, 2009, at 9:00 a.m., in Courtroom 9.


IT IS SO ORDERED.

**Dated: April 1, 2009** _/s/ **Dennis L. Beck**_
UNITED STATES MAGISTRATE JUDGE