# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARSIAL LOPEZ, et al., | ) | 1:07cv0474 DLB |
| | ) | |
| | ) | ORDER REGARDING DEFENDANTS' JOINT MOTION TO AMEND ORDER, FOR CERTIFICATION OF ISSUES AND FOR STAY PENDING APPEAL |
| Plaintiffs, | ) | |
| v. | ) | (Document 100) |
| DONNY YOUNGBLOOD, et al., | ) | |
| Defendants. | ) | |

On May 22, 2009, Defendants filed the instant joint motion to amend order, for certification of issues and for a stay pending appeal. The matter was heard on June 26, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Barrett Litt and Paul Estuar appeared telephonically on behalf of Plaintiffs. Jennifer Thurston and Terence Cassidy appeared on behalf of Defendants Kern County, Kern County Sheriff's Office, Sheriff Donny Youngblood and Former Sheriff Mack Wimbish ("Defendants").

## **BACKGROUND**

On June 21, 2007, Plaintiffs Marsial Lopez, Sandra Chavez, and Theodore Medina, individually and as class representatives, filed a First Amended Complaint ("FAC") against Kern County, the Kern County Sheriff's Department ("KCSO" or "KCSD"), Kern County Sheriff Donny Youngblood (officially and individually) and former Kern County Sheriff Mack Wimbish

1

1  (individually).  Plaintiffs seek injunctive relief and damages resulting from the strip and/or visual
2  body cavity searches of prisoners by the Kern County Sheriff's Department.
3        On March 31, 2009, the Court issued an order on the parties' cross-motions for summary
4  judgment.  The Court:  (1) granted Plaintiffs summary judgment/adjudication as to KCSO's
5  policy of group strip searching prisoners in violation of the Fourth Amendment; (2) granted
6  Plaintiffs summary judgment/summary adjudication as to KCSO's policy of strip searching
7  persons ordered released from custody in violation of the Fourth Amendment; (3) granted
8  Plaintiffs' motion for partial summary judgment/summary adjudication regarding violation of
9  California Constitution, Article I, Section 1; (4) denied without prejudice Defendants' motion for
10 summary adjudication regarding Plaintiffs' state law claims pursuant to California Civil Code
11 section 52.1; (5) granted Defendants' motion for summary adjudication that Defendants
12 Youngblood and Wimbish are entitled to qualified immunity regarding Plaintiffs' Fourth
13 Amendment claims specific to group strip searches; (6) denied Defendants' motion for summary
14 adjudication that Defendants Youngblood and Wimbish are entitled to qualified immunity
15 regarding the searches of detainees upon return from court appearances after they were ordered
16 released; (7) denied Defendants' motion for summary adjudication that the Sheriffs are state
17 actors and are entitled to Eleventh Amendment immunity as to Plaintiffs' causes of action for §
18 1983 claims; and (8) denied Defendants' motion for summary adjudication as to § 1983 claims
19 asserted against the County.
20       On April 1, 2009, the Court also granted Plaintiffs' motion for class certification.  The
21 Court certified the following classes:

> Post-Release Class: Persons who, from March 27, 2005, up to October 1, 2007, or the time of judgment or settlement of the case: (a) were in KCSD custody; (b) were taken from jail to court; (c) became entitled to release after going to court; and (d) were strip and/or vbc searched before release pursuant to KCSD's blanket policy, practice and/or custom to strip/vbc search all court returns, including those entitled to release.
>
> Group Strip Search Class: Persons who, from March 27, 2005, up to October 1, 2007, or the time of judgment or settlement of the case: (a) were in KCSD custody; (b) were subjected to a strip and/or vbc search in a group with other inmates also being strip/vbc searched, which search did not afford privacy from others; and (c) whose strip searches were conducted pursuant to KCSD's blanket policy, practice and/or custom to regularly conduct strip/vbc searches in a group setting.

On April 28, 2009, Defendants Sheriff Donny Youngblood and former Sheriff Mack Wimbish appealed the denial of Eleventh Amendment immunity. The appeal was processed to the Ninth Circuit on May 13, 2009, and has been assigned USCA Case Number 09-16006.

On April 28, 2009, Defendants also filed a motion for entry of judgment pursuant to Federal Rule of Civil Procedure 54(b). By that motion, Defendants requested that the Court certify the following issues for appeal: (1) the County's liability under 42 U.S.C. § 1983 for policies of the Sheriff as they relate to operation of the jail; (2) strip searching inmates in groups violated the Fourth Amendment to the United States Constitution; (3) strip searching inmates in groups violated Section 1 of the California Constitution; and (4) strip searching inmates in groups forms an underlying basis for liability under California Civil Code section 52.1. By separate order, the Court denied the motion for entry of judgment pursuant to Fed. R. Civ. P. 54(b).

On May 22, 2009, Defendants filed the instant motion to amend the Court's March 31, 2009 order, for certification of issues pursuant to 28 U.S.C. § 1292(b) and for a stay pending appeal. Defendants also filed the Declaration of Terence Cassidy. On June 12, 2009, Plaintiffs filed their opposition, along with the Declaration of Barrett Litt. Defendants filed a reply on June 19, 2009.

## DISCUSSION

Pursuant to 28 U.S.C. § 1292(b), Defendants move the Court to amend its March 2009 order and to certify the following issues for immediate interlocutory review: (1) Fourth Amendment (and related state law) liability for post-arraignment group strip searches; (2) Fourth Amendment (and related state law) liability for strip searches of court releasees; and (3) Eleventh Amendment immunity of the sheriff defendants.[1]

---

[1] The notice of motion seeks certification of the following issues: (1) the constitutionality of group strip searches of post-arraignment detainees and inmates under the Fourth Amendment; (2) the constitutionality of strip searches of post-arraignment detainees and inmates returning from outside the secure jail facility for criminal case appearances in Kern County Superior Court, where those detainees/inmates were ordered released by the court, but were returned to the jail for holding until necessary administrative out-processing was completed; and (3) the County's status as a potentially improper party pursuant to Eleventh Amendment immunity. (Doc. 100).

3

A.     Legal Standard

Title 28 of the United States Code, section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The Ninth Circuit has identified the certification requirements of section 1292 as: (1) a controlling question of law; (2) substantial grounds for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982). Congressional legislative history "indicates that [section 1292] was to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation. It was not intended merely to provide review of difficult rulings in hard cases." United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966).

If a district court determines to certify an order for interlocutory appeal after the order is initially entered, the proper procedure is to amend the order to contain the required certification. Haas v. Pittsburgh Nat. Bank, 627 F.2d 677, 679 n. 1 (3d Cir. 1980); Fed. R. App. P. 5(a)(3) (allowing district court to amend its order to include required permission or statement for appeal). Accordingly, Defendants also request amendment of the Court's March 2009 order.

B.     Analysis

    **1.     Timeliness of Motion for Certification**

As a preliminary matter, Plaintiffs oppose the certification motion on timeliness grounds. A section 1292(b) petition must be filed in the district court within a reasonable time after the order sought to be appealed. Ahrenholz v. Board of Trustees of Univ. of Ill., 219 F.3d 674, 675 (7th Cir. 2000). Plaintiffs essentially argue that by waiting almost two months after the Court's order before filing the motion and by "failing to come forward with a legitimate excuse,"

1 Defendants have failed to demonstrate that they brought the motion within a reasonable period of time. To support their argument, Plaintiffs first point to the timing of other filings in this case. For instance, Defendants Youngblood and Wimbish filed a notice of appeal on April 28, 2009. On that same date, Defendants filed a Rule 54(b) motion, seeking entry of judgment regarding the County's liability for the Sheriff's policies (Eleventh Amendment challenge) and the lawfulness of group strip searches. Only after Plaintiffs filed their opposition to the Rule 54(b) motion did Defendants file the instant motion for interlocutory appeal.

Plaintiffs also challenge Defendants' explanation for the delay, which is found in the declaration of defense counsel, Terence Cassidy, filed concurrently with the motion for certification. In relevant part, Mr. Cassidy declares that he was out of the county for a personal vacation between March 30 and May 6, 2009, and he did not become aware of the Court's March 31, 2009 order until he returned on May 6, 2009. Cassidy Decl. ¶ 2, 4. After conducting research, he determined that it would be appropriate to seek interlocutory appeal of the Eleventh Amendment immunity issue. Id. ¶ 4.

Defendants counter Plaintiffs' arguments by correctly noting that there is no time limit for requesting an interlocutory appeal in the statute. Defendants also attempt to distinguish cases cited by Plaintiffs. For example, Defendants characterize Martens v. Smith Barney, Inc., 238 F.Supp.2d 596 (S.D.N.Y. 2002) as involving a five-month delay without an explanation. Defendants overlook the two periods of delay addressed in Martens. In that case, plaintiffs allowed five months to pass before filing their certification motion and explained that they were awaiting an appellate court ruling in a separate case. The court considered this excuse, but also considered the two month delay following the appellate decision in which counsel failed to request certification. The court found that the asserted reasons for the subsequent two month delay, a busy work schedule and a desire for vacation, were insufficient. Id. at 601.

Defendants also attempt to distinguish Richardson Elec. v. Panache Broadcasting, 202 F.3d 957 (7th Cir. 2000) and Ferraro v. Sec. of U.S. Dept. Of Health and Human Servs., 780 F.Supp. 978 (E.D.N.Y 1992) as involving a lack of explanation for delay. Contrary to Defendants' assertion, Richardson did involve a proffered excuse, albeit one characterized as

"patently inadequate." Richardson, 202 F.3d at 958. The Richardson court reasoned that "a district judge should not grant an inexcusably dilatory [1292(b) certification] request [relating to a two month delay]." Similarly, the court in Ferraro rejected a 1292(b) certification motion on the ground that there was no justification for a nearly two and a half month delay in filing the motion. Ferraro, 780 F.Supp. at 979.

Although Defendants' efforts to distinguish Plaintiffs' cases fall short, the Court does not find the instant 1292(b) certification request to be inexcusably dilatory. Defense counsel responsible for the instant motion was unaware of the Court's March 2009 order until early May. Thereafter, he filed the motion approximately 16 days after reviewing the Court's order. Further, Defendants' total delay is less than the two months condemned by Ferrraro and Richardson. Accordingly, the Court finds that the request was brought within a reasonable time.

**2.     Certification Requirements**

Having addressed Plaintiffs' preliminary assertions regarding timeliness, the Court turns to the certification requirements of section 1292, which have been identified as: (1) a controlling question of law; (2) substantial grounds for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation.

*Controlling Question of Law*

Issues that constitute a controlling question of law need not be "dispositive of the lawsuit" but cannot be "collateral to the basic issues of [the] case." United States v. Woodbury, 263 F.2d 784, 787-88 (9th Cir. 1959). The Ninth Circuit has cited the Third Circuit's finding that "at the very least, a controlling question of law must encompass 'every order which, if erroneous, would be reversible error on final appeal.'" In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982), citing Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3rd Cir. 1974).

Defendants argue that the issue of whether KCSO's group strip search practices violated the Plaintiffs' federal constitutional rights is a pure question of law. Defendants further explain that the issue is controlling because resolution in Defendants' favor would control the overall outcome of the case. Although the post-release search issue would remain, Defendants assert that a favorable appellate determination regarding group strip searches would dramatically reduce the

number of potential class members, lead to speedier resolution (including settlement or dismissal) and alter a potential damages verdict or settlement. Defendants also assert that a stay in proceedings is warranted from a public policy standpoint, as the ruling at issue–the first of its kind in California–would have an adverse effect on all law enforcement and corrections institutions throughout the state.

As with the previous issue, Defendants argue that the issue of persons who were searched after returning to the jail for holding following criminal appearances in the Superior Court during which they were ordered released is a purely legal issue. Defendants contend it is controlling as to the overall status of the litigation because it would conclusively establish the size of the post-release class and define the class for purposes of settlement or termination.

Defendants also indicate that the issue of the Sheriff defendants' immunity pursuant to the Eleventh Amendment concerns a pure question of law. Defendants argue that it is a controlling question because if the Ninth Circuit concludes that the Sheriffs acted on behalf of the State, then none of the federal claims (or dependent state law claims) could be attributable to the County and the County would become an improper party to this litigation. Defendants reason that "the departure of the County (and its coffers) would speed the conclusion of this litigation." Motion, pp. 8-9.

As to the above issues, Plaintiffs do not dispute that they are controlling questions of law. Opposition, p. 16. The Court finds that the issues presented by Defendants for interlocutory appeal present pure questions of law. If the Court's conclusions as to these questions are wrong, it likely would constitute reversible error. See, e.g., Sanders v. City of Bakersfield, 2007 WL 3274219, *3 (E.D.Cal. Nov. 5, 2007) (certifying key issues for interlocutory appeal that were legal questions) (citing Katz,496 F.2d at 755)). Accordingly, the Court concludes that the identified issues are controlling questions of law.

Insofar as Plaintiffs contend that Defendants have failed to address their heavy burden of establishing that this case is an "exceptional situation" warranting an immediate appeal, Defendants have established that an appeal could avoid protracted and expensive litigation. The Ninth Circuit has indicated that "the legislative history of 1292(b) indicates that [this] section was

to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." In re Cement Antitrust Litigation, 673 F.2d at 1026; United States Rubber, 359 F.2d at 785 (citing legislative history); Davis v. Calvin, 2009 WL 981920, *1 (E.D.Cal. April 10, 2009) ("Section 1292(b) is to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation.").

*Substantial Grounds for Difference of Opinion*

Plaintiffs generally argue that Defendants mere disagreement with the Court's ruling does not establish a substantial ground for difference of opinion and the Court should determine whether there is a meaningful debate or split in the appellate courts on the issues sought to be appealed. "[S]ubstantial ground for difference of opinion does not exist merely because there is a dearth of cases." White v. Nix, 43 F.3d 374, 378 (8th Cir. 1994). Further, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate substantial ground for difference of opinion." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996). A district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." Max Daetwyler Corp. v. Meyer, 575 F.Supp. 280, 283 (E.D.Pa.1983) (emphasis in original); S.A. *ex rel* L.A. v. Tulare County Office of Educ., 2009 WL 331488, *5 (E.D.Cal. Feb. 10, 2009) (differing views of parties insufficient; denying interlocutory appeal where factual issues existed).

    a.    Fourth Amendment Liability for Group Strip Searches

As the March 2009 order indicated, there is a paucity of case law in this circuit limited to the specific issue of liability for a blanket policy of conducting group strip searches of post-arraignment detainees. The order also relied on Bell v. Wolfish, 441 U.S. 520 (1979), the governing case as to the parameters of detainee/inmate strip searches, but distinguished it factually from the instant matter. Defendants note that the order also distinguished the Eleventh Circuit's decision in Powell v. Barrett, 541 F.3d 1298 (11th Cir. 2008) as not involving a visual body cavity search. Defendants argue that the Powell distinction is minimal from the instant matter because it

involved a group strip search and the issue should be submitted to the Ninth Circuit based on the divergence between this Court and the Eleventh Circuit.

The Court finds that Ninth Circuit review would clarify the state of the law in this circuit. As Defendants point out, a reversal by the Ninth Circuit would speed resolution of this case by making a clear legal finding as to liability for post-arraignment group strip/visual body cavity searches.

      b.  Fourth Amendment Liability for Strip Searches of Releasees

Defendants argue that the issue of Fourth Amendment violations sustained by persons returning from court back to the secure jail facility after an ordered release is contestable. Defendants argue that Court cited only to Craft v. County of San Bernardino, 468 F.Supp.2d 1172 (C.D.Cal. 2006), which is not binding and is limited to arrestees entitled to release as opposed to detainees who had been arraigned and, in some cases, already convicted. Defendants also reference the denial of qualified immunity on this issue based on the Court's citation to only one case, Ward v. San Diego County, 791 F.2d 1329 (9th Cir. 1985). Defendants argue that Ward is distinguishable as it related to the unlawful strip searches of misdemeanor offenders.

Plaintiffs argue that the Defendants are wrong and the Court did not rely only on Craft in holding that post-release strip and body cavity searches violate the Fourth Amendment. Plaintiffs claim that the Court "conducted a careful balancing test" under Bell. Plaintiffs indicate that the Court noted that (1) Defendants provided no authority to support the propriety of strip and cavity searching releasees; (2) Defendants offered no evidence to support their assertions that strip searching was necessary for security purposes; and (3) Defendants submitted no evidence to suggest that they could not otherwise segregate court releasees. Plaintiffs also indicate that there are a host cases, although not cited by the Court, that address the issue of strip searches of court returns entitled to release.

In reply, Defendants point out that the Ninth Circuit has not weighed in on the issue of these types of searches. Defendants assert that the Court has created an entirely new constitutional obligation regarding the knowledge required of a reasonable corrections officer as to the release status of the inmates in jail custody. Defendants contend that the Ninth Circuit

should be permitted to review this "new standard" and determine whether it "passes constitutional muster." Reply, pp. 7-8.

The Court does not agree that it has established a "new standard" regarding strip searches of court returns entitled to release or that limited citations equate with a contestable matter. However, the Ninth Circuit has not expressly declared unconstitutional the broad-based, blanket policy of strip searching persons entitled to release regardless of their status, i.e., arrestees entitled to release, detainees who have been arraigned and are entitled to release and detainees already convicted but entitled to release. Ninth Circuit review would clarify the state of the law in this circuit as to these factual distinctions.

          c.        Eleventh Amendment Immunity

Defendants argue that there is no doubt that this is a contestable issue because there is a schism between state and federal courts regarding Eleventh Amendment immunity application to California Sheriffs. Defendants assert that the Ninth Circuit "continues to hold that California Sheriffs act on behalf of the counties in which they serve, despite the California Supreme Court's unequivocal rulings that the Sheriffs [ ] act on behalf of the State." Motion, p. 9. Defendants contend that this creates an "untenable divergence" in the outcome of identical claims based only on the judicial venue in which they are litigated. Id. Defendants also contend that the Court's order conflicts with the meaning of California law as determined by the California Supreme Court.

Plaintiffs argue that this issue is the least in doubt based on the ruling in Streit v. County of Los Angeles, 236 F.3d 552 (9th Cir. 2001). Plaintiffs aver that when an appellate court is in "complete and unequivocal" agreement with a district court, there is no "substantial ground for difference of opinion." McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1258 (11th Cir. 2004). Plaintiffs argue that there is no reason to believe that federal law will change in Defendants' favor during the pendency of their appeal.

In reply, Defendants point out that if the Sheriffs are deemed State Actors, then the County would not be a proper party and the County's departure from the case (along with its potential settlement funds) would "indubitably speed the conclusion of this litigation." Reply, p. 6.

The Ninth Circuit's ruling in Streit is clear that the Sheriff acts for the County in its oversight and management of the local jail. Streit, 236 F.3d at 565. However, the Court recognizes that the Ninth Circuit addressed the issue of Eleventh Amendment immunity for Sheriffs prior to the California Supreme Court's determination in Venegas v. County of Los Angeles, 32 Cal.4th 820, 839 (2004) on which Defendants heavily rely. In Venegas, the court considered the issue of whether a sheriff acts on behalf of the state or county when conducting a criminal investigation, including detaining suspects and searching their home and vehicle. The court concluded that Sheriffs act on behalf of the State when performing law enforcement activities. Id. at 839. A definitive ruling by the Ninth Circuit would clarify the effect, if any, of the California Supreme Court's holding in Venegas on existing Ninth Circuit law. The Court also acknowledges that Defendants Youngblood and Wimbish have appealed the denial of Eleventh Amendment immunity and certifying this issue will alleviate potential inconsistent determinations.

Based on the above, the Court finds that the three issues identified by Defendants for certification involve controlling questions of law as to which there is substantial ground for difference of opinion and an immediate appeal from the Court's March 2009 may materially advance the ultimate termination of this litigation. Therefore, Defendants' motion to amend the order and for certification of issues is GRANTED. The March 31, 2009 order is certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and is HEREBY AMENDED.

**4.    Request for Stay**

Defendants assert that the only means to ensure fair and proper resolution in the most expeditious and economic way is to grant certification and stay the case.

Plaintiffs incorporate their arguments made in opposition to the Rule 54(b) motion regarding a stay. There, Plaintiffs opposed a stay based on prejudice to class members, arguing that class members have a right to notice under the Rules of Civil Procedure and notice is necessary to satisfy due process. Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 173-74 (1974) (mandatory notice to class members is designed to fulfill requirements of due process to which class action procedure is subject). Plaintiffs contended that it was difficult to imagine how due

process would be satisfied if class members were forced to wait a year or more (during the pendency of appeal) before discovering they were part of a class. Plaintiffs' counsel reported that the process could be well over two years. Plaintiffs further argued that by the time the case proceeds to trial witness memories will likely have faded and that the longer it takes for the appeal to conclude the more difficult it may be to provide notice to class members.

In reply, Defendants incorporate their responses to these arguments made in the Rule 54(b) motion. There, Defendants asserted that Plaintiffs failed to demonstrate prejudice from a stay. Defendants pointed out that the lawsuit was filed in June 2007, the earliest problematic strip search occurred more than two before that and a hearing on class certification did not occur until December 19, 2008 (by stipulation of the parties). Defendants contended that this undercut Plaintiffs' argument that the time for appeal would reduce the ability to locate class members. Defendants also indicated that a stay would be warranted during any interlocutory appeal.

Section 1292(b) does not mandate a stay. At oral argument, the parties discussed the remaining discovery in this matter, which includes obtaining the electronic jail records, deposing the person(s) responsible for compilation of those records, and analyzing the records to determine class members. Plaintiffs estimated that it would take 2-3 months alone to analyze the data. Defendants were agreeable to producing the electronic data and moving the discovery process forward to a point short of class notification in the event of Ninth Circuit review.

Accordingly, Defendants' request for a stay is DENIED WITHOUT PREJUDICE. The parties may proceed with discovery, including production of data by Defendants regarding potential class members and related depositions of the persons responsible for compiling such data. As appropriate, Defendants may renew their stay request if the Court of Appeals, in its discretion, permits an appeal to be taken pursuant to 28 U.S.C. § 1292(b).

IT IS SO ORDERED.

Dated:   **July 14, 2009**            /s/ **Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE