1  Barrett S. Litt, SBN 45527
2  Paul J. Estuar, SBN 167764
   E-Mail: pestuar@littlaw.com
3  LITT, ESTUAR & KITSON, LLP
   1055 Wilshire Boulevard, Suite 1880
4  Los Angeles, California 90017
   Telephone:  (213) 386-3114
5  Facsimile:  (213) 380-4585
6
7  Attorneys for Plaintiffs
8
9  PORTER SCOTT                              Mark L. Nations,Chief Deputy, SBN
   A PROFESSIONAL CORPORATION                101838
   Terence J. Cassidy, SBN 99180             Office of the County Counsel
10 Kristina M. Hall, SBN 196794              1115 Truxtun Avenue, Fourth Floor
   350 University Avenue, Suite 200          Bakersfield, California 93301
11 Sacramento, California  95825             Telephone: (661) 868-3800
   Telephone: (916) 929-1481                 Facsimile: (661) 868-3805
12 Facsimile:  (916) 927-3706
13
14                                           Attorneys for Defendants COUNTY OF
   Attorneys for Defendant COUNTY OF         KERN, KERN COUNTY SHERIFF'S
15 KERN                                      OFFICE, DONNY YOUNGBLOOD
                                             and MACK WIMBISH
16
17
18              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF CALIFORNIA
19
20 MARSIAL LOPEZ, SANDRA              Case No. CV-F-07-0474 DLB
   CHAVEZ, THEODORE MEDINA,
   each individually, and as class   [Hon. Dennis L. Beck]
21 representatives,
                                      **FINAL ORDER OF APPROVAL
22              Plaintiffs,           AND SETTLEMENT**
   vs.
23                                    Date:        August 26, 2011
   SHERIFF DONNY YOUNGBLOOD,          Time:        9:00 A.M.
24 et al.,                            Courtroom:   9
25              Defendants.
26
27
28

I.    INTRODUCTION

This lawsuit having come before this Court for a hearing, pursuant to this Court's Preliminary Approval Order, dated February 23, 2011 (the "Preliminary Approval Order") to consider and determine the matters set forth in the Preliminary Approval Order; and due notice of said hearing having been published and given; and all entities that made timely objections to the proposed settlement set forth in the Settlement Agreement made and entered into on October 26, 2010, and described in the Class and Settlement Notice, having been given an opportunity to present such objections to the Court; and the Court having considered the matter, including all papers filed in connection therewith, and the oral presentations of counsel at said hearing; and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    Each term and phrase used in this Final Order of Approval and Settlement shall have the same definition and meaning as in the Settlement Agreement, as follows:

a.    "Administrator" means the Class Administrator Gilardi & Co., LLC, as agreed upon by the parties and as to be appointed by the Court, to review and determine the validity and amount of claims submitted by a Settlement Class Member ("SCM") (as defined herein), according to the procedures set forth herein.

b.    The "Bar Date" is the date by which any SCM who wishes to receive payment pursuant to the Settlement Agreement must file his/her Proof of Claim and Release Form (attached as Exhibit B to the *Declaration of Tricia M. Solorzano*, concurrently filed with the Joint Motion for Final Order of Approval and Settlement), objections to this Settlement

Agreement, or request to be excluded from the class (opt-out). The Bar Date shall be calculated as the close of business on the 120th day after the last day of mailing Class Notice (the time frame for which mailing is up to two consecutive business days from beginning to end, as is addressed in ¶34 of the Settlement Agreement).

c. "Class Counsel" means Barrett S. Litt and Paul J. Estuar, of Litt, Estuar & Kitson ("LEK"), 1055 Wilshire Boulevard, Suite 1880, Los Angeles CA. 90017.

d. The "Class Notice" means the notice to the Class regarding settlement, to be sent to Class Members in a form substantially similar to that attached hereto as Exhibit C, and such other summary notice to be published in accordance with the terms of this Settlement Agreement.

e. The "Class Period" is March 27, 2005, to October 1, 2007.

f. The Settlement Agreement "Database" is the information provided in hard copy and/or electronic form by the Defendants to the Administrator and Class Counsel no later than ten (10) days from the date the Court grants preliminary approval of the terms of this Settlement Agreement (if it has not already occurred). It may include, to the extent available, the name, address at time of booking, date of birth, Social Security Number, whether the inmate is a Post-Release Settlement Class Member 1 or 2, and any other computerized data relevant to determining Class Membership or notifying Class Members.

g. The "Effective Date" means the date upon which a judgment entered by the Court approving the Settlement Agreement

2

becomes final. The Judgment will be deemed final only upon expiration of the time to appeal or, if a Notice of Appeal is filed, upon exhaustion of all appeals and petitions for writs of certiorari, the final resolution of which upholds the settlement.

h.    An "Opt-Out" is any Class Member who files a timely request for exclusion pursuant to the terms of the Settlement Agreement, as specified in Paragraph 43.

i.    The "Proof of Claim Form" means the Proof of Claim and Release Form required to be used to make a claim for payment under this settlement. A copy of the Proof of Claim form is attached as Exhibit B to the *Solorzano Declaration*.

j.    "Released Person" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents of the County of Kern, the Kern County Sheriff's Department, or any of them. "Released Persons" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

k.    "Post-Release Class" means those persons who, from March 27, 2005, up to October 1, 2007, (a) were in KCSD custody; (b) were taken from jail to court; (c) became entitled to release after going to court; and (d) were strip and/or visual body cavity ("vbc") searched before release pursuant to KCSD's blanket policy, practice and/or custom to strip/vbc search all court returns, including those entitled to release.

l.    "Group Strip Search Class" means those persons who, from

3

March 27, 2005, up to October 1, 2007, (a) were in KCSD custody; (b) were subjected to a strip and/or visual body cavity search in a group with other inmates also being strip/vbc searched, which search did not afford privacy from others; and (c) whose strip searches were conducted pursuant to KCSD's blanket policy, practice and/or custom to regularly conduct strip/vbc searches in a group setting.

m.   A "Class Member" means any member of either Class as defined above.

n.   A "Settlement Class Member" ("SCM") means any member of either Class as defined above, including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in ¶44 of the Settlement Agreement.

o.   A "Claimant with Liens" means those SCMs filing claims who owe amounts for any liens or court orders for restitution, child support, debts to county and statutory liens.

p.   "Strip Search" means a search conducted by Kern County Sheriff's personnel on a Kern County inmate in which the person was required to remove his or her clothing, including underwear, in the presence of a corrections officer and/or expose his or her breasts, genitals or body cavities for a visual inspection.

2.   This Court has jurisdiction over this Lawsuit and each of the parties to it.

## II.   SETTLEMENT AGREEMENT APPROVED BECAUSE FAIR, ADEQUATE AND REASONABLE

3.     The settlement of this lawsuit was not the product of collusion between Plaintiffs and Defendants or their respective counsel, but rather was the result of arm's-length negotiations conducted in good faith by the parties and their counsel, with the assistance of an independent mediator.

4.     The Class's satisfaction with the settlement is reflected in the claim statistics. There were 36,075 total identified class members in the County's database, 29,678 of whom had a mailing address.  After re-mailing returned mailings, the Class Administrator was able to mail successfully to 22,917 such members. There were 7,961 timely Claim Forms filed, which is over 34% of class members reached through the mail. (*See Solórzano Decl.*, ¶¶3-10.) If the total 36,075 class members are counted, this is a claim rate of 22%. According to Plaintiffs' counsel, who have handled several of these cases, this is on the high end of claim rates. (*See Declaration of Barrett S. Litt*, ¶5.) There were only two objections (addressed in Section VII, *infra*) and 15 opt-outs (addressed in Section VI, *infra*) , which means that, even if opt-outs are considered individuals dissatisfied in some form with the result (a conclusion not borne out by the content of the opt-outs), less than 1/20 of 1% of class members expressed any type of arguable dissatisfaction. *Litt Decl.*, ¶6.  This is a highly favorable reaction by the class to the settlement. *See, e.g., Hughes v. Microsoft Corp.,* 2001 WL 34089697, 8 (W.D.Wash. 2001) (court found that the "class members overwhelmingly support[ed] the settlement" where there were over 37,000 notices sent out, 2,745 class members participated in the settlement, "only nine objections were submitted", and there were 86 timely opt-outs and over 20 additional defective or untimely opt-outs;  "these indicia of the approval of the class of the terms of the

settlement support a finding of fairness under Rule 23"), citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir.1998) (despite vigorous objections and appeal by objectors, "fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"; court did not abuse its discretion in approving settlement).

5.    The Settlement Agreement and the settlement set forth therein – attached to the Preliminary Approval Order in this case – are hereby approved and found to be fair, adequate, reasonable, in the best interest of the Class as a whole, and in satisfaction of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

## III.    CERTIFICATION OF STRIP SEARCH CLASSES

6.    The Court has previously certified Strip Search Classes under Fed. R. Civ. P. 23(b)(3) for damages and monetary relief.  Class Members have a right to opt out of the settlement.  The Court hereby reaffirms the class definitions as set forth in the Class Certification Order of April 1, 2009, and reiterated in the Settlement Agreement, including the class period of March 27, 2005, to October 1, 2007.

7.    The Court reaffirms that all the criteria of Fed. R. Civ. P. 23(a) and (b)(3) are met for all the classes settled herein.  Specifically, the Court finds that all the criteria of Rule 23(a) are met, to wit, 1) that the class is so numerous that joinder of all members individually is impracticable, 2) that there are questions of law or fact common to the class, 3) that Plaintiffs' claims are typical of the claims of Class Members, and 4) that the persons representing the class must be able fairly and adequately to protect the interests of all members of the class. The Court further finds, pursuant to the provisions of Rule 23(b)(3) that 1) the common

1   factual and legal issues predominate over any such issues that affect only
2   individual Class Members, and 2) that a class action is superior to other available
3   methods for the fair and efficient adjudication of the controversy. The Court
4   further concludes that nothing in the parties' settlement alters, but rather, if
5   anything, reinforces, the prior conclusions it reached regarding the desirability of
6   the class action mechanism as a means of resolving the claims in this case.

7   **IV.    NOTICE**

8       8.     As required by this Court in its Preliminary Approval Order: (a) Class
9   and Settlement Notice, and Claim Forms, were mailed by first-class mail to all
10  Class Members for whom addresses could be determined, and to all potential Class
11  Members who requested a copy; and (b) Class and Settlement Notice was
12  published as set forth in the Settlement Agreement and in the Preliminary
13  Approval Order, all as more fully set forth in the *Declaration of Tricia M.*
14  *Solorzano*.

15      9.     The notice given to the class is hereby determined to be fully in
16  compliance with requirements of Rule 23 of the Federal Rules of Civil Procedure
17  and due process, and is found to be the best notice practicable under the
18  circumstances and to constitute due and sufficient notice to all parties entitled
19  thereto.

20      10.    Due and adequate notice of the proceedings having been given to the
21  Class and a full opportunity having been offered to the Class to participate in the
22  hearing, it is hereby determined that all Class Members, except those who have
23  opted out of the settlement, listed in the *Declaration of Julia C. White*, are bound
24  by this Final Order of Approval and Settlement.

25  **V.    CLAIMS FILED**

26      11.    The claims filing postmark deadline was on July 13, 2011.  As of

27                                      7
28

August 12, 2011, the Class Administrator has received 7,961 timely Claim Forms and 111 late Claim Forms. *Solorzano Decl.*, ¶10.  Of the 111 late Claim Forms, 21 were Post-Release Class members.

12.     The Court will allow the valid late claims to be considered and paid if received by the Claims Administrator by August 26, 2011.

## VI.     OPT-OUTS

13.     There were 14 unequivocal opt-outs. *Solorzano Decl.*, ¶11.  This figure does not include 1 individual who subsequently retracted [his/her] opt-out.

14.     As class members have opted out, Plaintiffs' counsel have attempted to contact opt-outs to see if they had any questions that could be cleared up. *Declaration of Julia C. White*, ¶2.  Counsel was able to find contact information for 12 of the individuals. *White Decl.*, ¶¶2(a), (c), (d), (e).  Based on these contacts, Plaintiffs' counsel have been able to determine the nature of most if not all of the reasons the opt-outs were filed.

15.     Six individuals indicated that they believed they were never strip searched. *White Decl.*, ¶2(d).  One additional individual indicated he was never incarcerated in Kern County Jail. *White Decl.*, ¶2(e).  As such, these people should not be considered opt-outs even if they filed an opt-out request, as they do not qualify as class members at all because a condition of membership in each class is that the person was strip searched by Kern County.

## VII.     OBJECTIONS

16.     There have been two objections to the settlement in this matter.

17.     The first objection, by Gregory McClellan, was dated March 24, 2011, prior to the deadline for filing objections.  A copy of Mr. McClellan's objection was previously filed with the Court on July 13, 2011.  Mr. McClellan also filed a claim form.  According to Mr. McClellan, he was strip searched on three occasions

1   (twice on 11-09-2006, and once on 11-16-2006).  He objects to the settlement

2   amount due him, which he indicates is $200, and instead is seeking $1,500.00. He

3   cites no case law and gives no particular factual reason why he is entitled to

4   $1,500, as opposed to the amount he is due to receive as a result of this settlement.

5   18.   The second objection, by Sean Robbins, was dated June 8, 2011, prior

6   to the deadline for filing objections.  A copy of Mr. Robbins' objection was

7   previously filed with the Court on July 13, 2011.   He also filed a claim form, and

8   he is due $200 under the settlement. According to Mr. Robbins, he was strip

9   searched on multiple occasions during the booking process, during inmate transfers

10  and on return from court.  Mr. Robbins also claims that he was strip searched by

11  female officers. He objects to the settlement amount due him, but does not provide

12  an amount to which he believes he is due.

13  19.   The settlement of this lawsuit was not the product of collusion

14  between Plaintiffs and Defendants or their respective counsel. Rather, it was the

15  result of bona fide and arm's-length negotiations conducted in good faith by the

16  parties and their counsel with the assistance of an independent mediator, who is a

17  retired United States District Judge.

18  Plaintiffs' counsels' efforts prior to settlement were extensive, and involved

19  all that occurs in a case that is litigated up to the eve of trial. The work performed

20  included: 1) extensive investigation of the underlying circumstances, including

21  speaking with scores of class members; 2) discovery including three sets of

22  requests for production of documents, interrogatories and multiple depositions; 4)

23  multiple summary judgment motions by both sides, on all of which Plaintiffs

24  prevailed; 5) a successful contested motion to certify the classes; 6) retention of

25  data consultants and extensive analysis of computerized jail data; 7) contested

26  motions to certify an interlocutory appeal; and 8) attendance and work associated

27

28

9

1    with four day-long mediation sessions.

2           Any settlement requires compromise by both parties and involves the

3    weighing of several considerations.  One significant factor in settlement is to take

4    into account the risks associated with proceeding through to trial.  The issues

5    involved are complex areas of constitutional law in an arena where considerable

6    deference is given to jail officials. The settlement in this case encompassed two

7    categories of class members. At the time this lawsuit was filed, the law was not

8    settled in either of the areas encompassed by the suit.  For the Group Strip Search

9    class, there is very little law stating that a strip search in a group setting is in and of

10   itself a constitutional violation.  For the Post-Release class, in the course of the

11   lawsuit, there were developments that can fairly be stated as problematic for

12   Plaintiffs.  Those cases, namely *Bull v. City & County of San Francisco*, 595 F.3d

13   964, 966 (9th Cir. 2010); *Powell v. Barrett,* 541 F.3d 1298 (11th Cir.2008); and

14   *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 621 F.3d 296 (3d

15   Cir. 9/21/2010), *cert. granted*, 2011 WL 202772 (4/4/2011), all demonstrated

16   substantial risk and uncertainty for Plaintiffs in what is now unsettled legal terrain.

17   Further, the authority upon which Plaintiffs were able to rely was relatively scant,

18   and emanated from the body of law whose validity is at least called into question

19   by *Bull*, *Powell* and *Florence*.

20          The financial terms of the settlement are very favorable to class members.

21   Post-release class members receive $1500 for a first time and $750 for a second

22   offense. This is considerably higher than the average recovery in many other strip

23   search class actions. While this is partly explained by the scale of the other cases

24   compared to this one, the fact remains that class members are receiving very

25   favorable payments. In addition, those for whom searches would have otherwise

26   been legal under Plaintiffs' theories had they been conducted in privacy (i.e., those

27                                              10

28

1   strip searched in groups), are receiving money, including Messrs. McClellan and

2   Robbins.

3          The reason for the difference in values for the two groups - $1500 for post-

4   release versus $200 for group strip search –  is primarily that the very act of strip

5   searching post-release is (Plaintiffs contended) illegal. In contrast, Plaintiffs did

6   not contend that the act of strip searching those searched in groups was illegal,

7   only the manner of the search. Since most jails provide a variety of settings in

8   which inmates are nude in front of each other and in front of guards, the damages

9   for group searches are relatively minimal compared to damages for one illegally

10  strip searched.

11         The results in this case cannot be judged solely by the monetary component

12  of the settlement. The County ceased all strip search practices addressed in this

13  settlement. That is a major accomplishment, particularly in light of the standing

14  limitations imposed on such cases. Tens of thousands of future inmates have been

15  spared the "embarrassing and humiliating experience", and "extensive intrusion on

16  personal privacy", that a strip search, "regardless of how professionally and

17  courteously conducted", necessarily entails. In some cases, they will not be strip

18  searched at all (post-release inmates) and in others, if they are strip searched, it will

19  be done with much greater privacy.

20         Unlike most class actions, Plaintiffs and the classes they represent were

21  persons charged with crimes and, thus, not people generally considered

22  sympathetic or desirable by the public at large.  This makes any potential jury

23  verdict speculative at best.

24         With regard to Mr. Robbins' objection that he was strip searched by female

25  guards, this was not a claim raised in the lawsuit. More importantly, the Ninth

26  Circuit has held that visual body strip searches of male inmates by female guards

27

28

are not per se unlawful. *See Grummett v. Rushen,* 779 F.2d 491, 495-96 (9th Cir.1985) (pat-down searches of male inmates that included groin area by female guards do not violate Fourth Amendment); *Michenfelder v. Sumner,* 860 F.2d 328, 332, 334 (9th Cir.1988) (occasional visual strip searches of male inmates by female guards do not violate Fourth Amendment; "[o]ur circuit's law respects an incarcerated prisoner's right to bodily privacy, but has found that assigned positions of female guards that require only infrequent and casual observation, or observation at distance, and that are reasonably related to prison needs are not so degrading as to warrant court interference" ); *Jordan v. Gardner*, 986 F.2d 1521, 1524-26 (9th Cir. 1993) (policy that male guards would routinely engage in "clothed body searches" of women inmates, which entailed a search up to several minutes, running the guard's hands over the female inmate's clothed body from the neck to the feet, "push[ing] inward and upward when searching the crotch and upper thighs", and flattening the breast, violated the Eighth Amendment; the record established that that "women experience unwanted intimate touching by men differently from men subject to comparable touching by women", and that many of the women inmates at WCCW suffered had "histories of sexual or physical abuse by men"). Had Mr. Robbins wished to pursue such a claim for himself, he had that right, but it is not a valid objection to this settlement.

20.    Based on the foregoing, the Court overrules the objections by Gregory McClellan and Sean Robbins.

**VIII.  ALLOCATION AND DISTRIBUTION OF SETTLEMENT FUND**

21.    The Court hereby approves the Settlement Agreement. The Court finds that Defendants' proposed payment of the following amounts (each of which is in addition to the other) are within the range of what would constitute a fair, reasonable, and adequate settlement in the best interests of the class as a whole:

(a)    A person who was subjected for the first time during the class period (between March 27, 2005, and October 1, 2007) to a Kern County strip search after a Court ordered him or her to be released from all pending charges, and the person was in fact entitled to immediate release based on that order, will receive a payment of $1500 (subject to certain possible adjustments described below in ¶2(d)).

(b)    A person who was subjected for a second time during the class period (between March 27, 2005, and October 1, 2007) to a Kern County strip search after a Court ordered him or her to be released from all pending charges, and the person was in fact entitled to immediate release based on that order, will receive a payment of $750 in addition to the $1500 for the first strip search (again subject to certain possible adjustments described below in ¶2(d)). No additional payments will be made to persons subjected to more than two such searches.

(c)    A person who was strip searched in a group while in Kern County custody will receive a one time only payment (regardless of the number of times the person was strip searched in a group) of $200 (subject to certain possible adjustments described below in ¶2(d)).

(d)    Notwithstanding the amounts set forth above to be paid to each class member, the parties have agreed to a maximum payout for each class, the amount of which was derived from their joint estimate that claims are unlikely to exceed approximately 28% of the class members (and, based on past experience, will likely be meaningfully lower than that). Accordingly, the amounts to

be paid Class Members (not including class representatives) will be adjusted if the amount to be awarded eligible Class Members in either the Post-Release or Group Strip Search who make claims exceeds the total amount to be paid to that Class. In that event, the amount that members of that class receive will be adjusted on a pro-rated basis, which would result in payment to individual Class Members of amounts lower than those set forth above. The total amount paid to Post-Release Class Members is capped at $2,335,830.00, and if claims exceed that, they will be adjusted on a pro-rated basis so that the total payment to such Post-Release Class Members (first and second time combined) will not exceed that total. The amount paid to Group Strip Search Class Members is capped at $2,016,000.00, and if claims exceed that, they will be adjusted on a pro-rated basis so that the total payment to such Group Strip Search Class Members will not exceed that total.

(e)    Class administration costs, as described below at Section X.

(f)    $2,000,000 in attorneys' fees, plus class counsel costs not to exceed $65,000.

(g)    $30,000 damages award to each Named Plaintiff, of whom there are three, as identified below at Section IX.

22.    The Administrator shall make payments to SCMs who have filed timely claims in accordance with this Final Approval Order within a reasonable time, with a goal of within 120 days after the Effective Date. If a check to a SCM is not cashed within three months of its mailing, the Administrator shall hold the funds for six additional months, during which time it shall make reasonable efforts to contact the person to whom the un-cashed check was written to make

14

arrangements for its cashing or reissuance. Any such funds not cashed within one year of its mailing shall revert to Defendants.

## IX.   NAMED PLAINTIFFS' DISTRIBUTION

23.   The class representatives are Marsial Lopez, Sandra Chavez, and Theodore Medina.  The Court awards each of the Named Plaintiffs $30,000.  The Named Plaintiffs will not otherwise participate in the claims process involving SCM's, or receive any other payment under the terms of the Settlement Agreement.

24.   The Court concludes that this award is justified because the Named Plaintiffs made contributions to the class as a whole, justifying awards to them higher than those to the general class. In addition, the Named Plaintiffs' individualized damages claims, including special damages, are a factor in the determination of the sum they receive. Such determinations cannot reasonably be made for class members in general without unduly consuming funds for administrative costs that will otherwise be available for distribution to Class members. Any fees due Class Counsel for their representation of the Named Plaintiffs are encompassed within the Class Fund Attorneys' Fees referenced herein.

## X.   CLASS ADMINISTRATION

25.   The Court reaffirms the retention of Gilardi & Co., LLC ("Gilardi") as Class Administrator to administer the distribution of the Class and Settlement Notice. The Court authorizes the payment, to be made immediately by the Defendants to cover Gilardi's expenses to date.  The Court also authorizes payment of Gilardi's further expenses by the Defendants related to class administration, distribution of settlement checks to Class Members, and handling of payments to Claimants with Liens as set forth in the Settlement Agreement.

26. As part of the overall costs of Class Administration, the Court authorizes payment by Defendants of any expenses for a Special Master as set forth in the Settlement Agreement, should retention of a Special Master become necessary.  No further order of this Court is required to pay Class Administration costs.  Such payment shall be separate from the payment of Named Plaintiffs, attorneys' fees and costs, and payments to class members.

## XI. LIEN PROVISIONS

27. Consistent with the terms of the Settlement Agreement, the Class Administrator shall deduct from any claim certain payment amounts owed by a Claimant with Liens for any liens or court orders for restitution, child support, debts to county and statutory liens. The Class Administrator will make payment to Kern County, the proper payee and/or their designee for those payment amounts deducted as set forth in this paragraph. The Defendants shall prepare a list of the liens or orders applicable to each Claimant with Liens. That list will be provided to the Administrator, which will be responsible to confirm the list of such liens.  The following procedures shall apply to the liens.

a. For Claimants with Liens, the payment disbursement letter accompanying any claim check sent to them shall include a notice of that amount, specifying the nature of the lien and the purported amount of the lien. The Notice shall include advising the claimant of his or her right to contest the lien and advise him or her of the procedures to do so. The Notice will advise the Claimant with Liens that they have 30 days from the date of receipt of such notice (based on the postmark of said notice) to file a Notice Contesting Lien, and of the procedure to contest the lien. A form Notice Contesting Lien shall be provided to

each Claimant with Liens, to be prepared by the Administrator subject to approval by the parties, which will be used to contest the lien.  The Notice Contesting Lien shall specify the grounds for the objection, and copies shall be sent to Class Counsel, Defendants' counsel and the Claims Administrator.

b.     First, the SCM, Class Counsel and Defendants' Counsel will attempt to resolve the objection by meet and confer conference. In the event the objection cannot be resolved in that fashion, the Special Master agreed to pursuant to ¶49 of the Settlement Agreement will be empowered to resolve any lien disputes under this paragraph. To participate as a class member, any Claimant with Liens will be deemed to have agreed that the Special Master's determination shall be binding and non-appealable, and that fact shall be included in the letter sent to Claimants with Liens. Such a claimant may present his or her contentions and supporting documents in writing to the Special Master. The Special Master will decide the validity of the lien, and may request recommendations from each side's counsel before doing so.

c.     Despite the amount of any lien, no Claimant with Liens shall have to pay more than 50% of his/her class fund payment towards the lien, which ensures that the claimant will receive funds for his/her claim regardless of the amount of any lien.

d.     The cost of the Special Master shall be borne by the Defendants as part of the Class Administration costs.

28.   The Court approves the use of the liens under the terms set forth

17

above, which will reduce the portion of the settlement provided to any SCM to whom these provisions apply. Any government recordation of such liens or debts shall be adjusted to the extent necessary to reflect the reduction resulting from the pay down of the liens or debts effectuated by this provision.

## XII.   SPECIAL MASTER

29.   The Court reaffirms the appointment of retired United States District Judge Raul A. Ramirez as the Special Master in this case.

## XIII.  CLASS COUNSEL

30.   The Court reaffirms the appointment of Barrett S. Litt and Paul J. Estuar of Litt, Estuar & Kitson, LLP, as Class Counsel.

## XIV.  CLASS FUND ATTORNEYS' FEES

31.   As set forth in the Settlement Agreement, Defendants shall pay a one-time only lump sum payment of $2,000,000 + costs (Two Million Dollars + actual costs) issued to Litt, Estuar & Kitson, LLP, which payment is inclusive of fees and costs.  This payment represents a full and final settlement of all past, present and future attorneys' fees and all past, present and future ordinary and extraordinary costs.  It shall be paid as specified in ¶34, *infra*.

32.   The Court has reviewed the Plaintiffs' counsel's claim for attorneys' fees and finds them well within the accepted range for class fund fees.

33.   The Court finds the parties' agreement regarding attorneys' fees and costs to be reasonable, and awards the requested fees and costs. It addresses the issue in a separate order approving the fees and cost request herein.

## XV. FORM OF PAYMENT OF NAMED PLAINTIFFS' DISTRIBUTION AND ATTORNEYS' FEES

34. Within 30 days after the Effective Date, Defendants or their insurers will issue a check that will include the approved attorneys' fees and costs and the funds awarded to the class representatives in a single check.  Alternatively Defendants or their insurers may make a single wire transfer to the Litt, Estuar & Kitson, LLP Client Trust Account that will include the approved attorneys' fees and costs, and the funds awarded to the class representatives in a single transfer (hereafter the "Class Rep/Fee Transfer") within thirty (30) days of the Effective Date.

## XVI. GENERAL PROVISIONS

35. Claim forms not received by August 26, 2011, shall not be paid, although such persons shall nonetheless be bound by this Order.

36. All class members except those who timely filed opt-outs shall be bound by this Order.

37. Except as otherwise provided in this Order, each party shall bear its own costs, expenses and attorneys' fees.

38. The use of the masculine gender herein is construed to include the feminine and/or the neuter where applicable. The use of the singular herein is to be construed to include the plural where applicable. The use of the plural herein shall be construed to include the singular where applicable.

39. Any disputes regarding the right of a claimant or class member to qualify for payment under Order shall be resolved by the Special Master.

40. The Court reserves and maintains jurisdiction over this settlement and its provisions, and over the claims administration and distribution of the funds. Disagreements between the parties on any disputes or unresolved aspects of this

Order shall be subject to mediation before the mediator who has mediated this case to date. If mediation is not successful, the matter shall be brought to this Court for resolution.

41.    At the conclusion of the Class Distribution, the Class Administrator shall submit a report to the Court summarizing the payments made to the Class, and seeking any final administrative costs to be approved.

## XVII.  FINAL RESOLUTION

42.    The monetary relief provided for in the Settlement Agreement shall compensate for all alleged violations of rights and all claims by the Plaintiff class members that were or could have been brought in this civil action under any theory of liability related to allegedly unlawful strip searches of those within the class definitions contained herein, except as to monetary damages for those class members who choose to opt out.

43.    The Court hereby dismisses the lawsuit on the merits, with prejudice, and without further costs, with such dismissal subject only to compliance by the Parties with the terms and conditions of the Settlement Agreement and this Final Order of Approval and Settlement.

44.    Plaintiffs, including their agents, attorneys and assigns, are hereby severally and permanently barred and enjoined, to the fullest extent permitted by law, from filing, commencing, instituting, maintaining, prosecuting or participating in a lawsuit or any other proceeding against the Defendants, including the employees, entities, agents, attorneys and insurers of Defendants, involving or based on any of the claims encompassed by this Settlement and Order, including specifically claims on behalf of any class member whose claims are covered by this Settlement and Order.

45.    The Named Plaintiffs and each Class Member waive all rights or

benefits which he or she now has or in the future may have under the terms of California Civil Code §1542, arising from, alleged in, or pertaining to the claims that were asserted in the Lawsuit, specifically claims for strip searches and/or visual body cavity searches. Section 1542 reads:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

46.     Plaintiffs have not relied upon the advice of Class Counsel as to the legal and/or tax consequences of this settlement, the payment of any money by the Defendants or the distribution of the Settlement Funds.

47.     Neither this Final Order of Approval and Settlement, the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall constitute evidence or an admission by any Defendant that any acts of wrongdoing have been committed, and they shall not be deemed to create any inference that there is any liability therefore. Neither this Final Order of Approval and Settlement, nor the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any other matter or proceeding in any court, administrative agency, arbitration, or other tribunal, other than as expressly set forth in the Settlement Agreement.

///
///
///
///
///

21

48.     Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and therefore directs entry of this Final Order of Approval and Settlement. Inasmuch as this disposes of all claims asserted in the Lawsuit, the Court further directs the Clerk to enter an order of dismissal pursuant to F.R.Civ.P Rule 41(a)(1)(2).


DATED: 30 August 2011          /s/ *Dennis L. Beck*

DENNIS L. BECK
UNITED STATES MAGISTRATE JUDGE



Submitted jointly by:

Barrett S. Litt
Counsel for Plaintiffs

By: __/s/  Barrett S. Litt _____
      Barrett S. Litt


Terence J. Cassidy
Counsel for Defendants

By: __/s/  Terence J. Cassidy___
      Terence J. Cassidy

22